## McKee *v.* Elliott-Lewis Electrical Company, Appellant.

Argued October 9, 1939.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Abram Orlow,* for appellant.

*Arthur Kitson, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., March 2, 1940:
Howard A. McKee, plaintiff below and appellee here-

in, has a verdict and judgment thereon in his action of assumpsit against Elliott-Lewis Electrical Company, doing business in Philadelphia and vicinity as the distributor for Delco-Frigidaire Conditioning Corporation, (sometimes referred to as Delco-Frigidaire Conditioning Division of the General Motor Sales Corporation of Dayton, Ohio) for commissions alleged to be due him upon a sale of air conditioning equipment to Universal Air Conditioning Company "for use in certain moving picture theatres in the Philadelphia metropolitan district." Plaintiff declared upon a verbal contract of employment, relative to the year 1937, between Elliott-Lewis Electrical Company and himself under which he was employed as "manager of its air conditioning department in charge of sales," his compensation to be a salary of $75 per week and traveling expenses, and in addition thereto certain overrides, or commissions, on all sales of Delco-Frigidaire air conditioning equipment in the territory for which defendant was the distributor, whether made directly by defendant or on its account.

Plaintiff's term of employment ended November 26, 1937. He concedes he was paid by defendant his salary, traveling expenses, and his commissions on all sales made directly by defendant in the Philadelphia district. His contention is that he is entitled, under the terms of his contract, to a two percent commission on an additional sale of air conditioning equipment made during his term of employment by Delco-Frigidaire Conditioning Corporation, the manufacturing company for which defendant was the distributor, "for the account of The Elliott-Lewis Company," to Universal Air Conditioning Company, for use in the Philadelphia district and at "the total price of $48,300 plus a write-up of $2,300, which amount of $2,300 was paid to The Elliott-Lewis Company as distributor." This sale, he contends, was within the terms of his contract fixing his commissions, inter alia, upon "all national users'

sales" made by the factory in the territory for which The Elliott-Lewis Company had a franchise. His suit, tried before GLASS, J., and a jury, was for $1,012, or two percent of the total amount involved in the sale to Universal Air Conditioning Company.

The defense of The Elliott-Lewis Company was, in general, that the sale to the Universal Air Conditioning Company was made directly by the Delco-Frigidaire Conditioning Division—the factory—and therefore did not fall within any of the classes of sales upon which the Elliott-Lewis Company had agreed to pay plaintiff a commission.

The case was necessarily for the jury as the controlling issue of fact was whether the parties, in making their verbal agreement for the employment of plaintiff, intended that he should be paid a commission upon a sale made under the practically uncontroverted circumstances surrounding the one here in question.

As to the terms of his contract of employment plaintiff testified: "A. I said to Mr. Rowland, (defendant's general manager with authority to hire employees) 'I want $75 a week, and an override of two percent on all sales made by the company in the Air Conditioning Department, and I want traveling expenses and an override of one percent on all national users' accounts sold in the provincial Philadelphia territory, outside of metropolitan Philadelphia, and a *two percent override on all national users' sales sold by the Elliott-Lewis Company in metropolitan Philadelphia.*' " (Italics supplied.)

The acceptance of this proposition by defendant was not denied; the issue was whether the last provision covers the sale to the Universal Air Conditioning Company.

Plaintiff's position relative to the basis of his claim under that paragraph was thus indicated in his testimony. "Q. And exactly how much are you claiming as owing you? A. $1012 on commission. Q. Based on

what? A. On sales to the Universal Air Conditioning Corporation of approximately fifty thousand dollars' worth of Delco-Frigidaire equipment, which was sold by the factory for the account of Elliott-Lewis, that is, in their territory in which they protected Elliott-Lewis."

In elaboration of his claim plaintiff testified that in the latter part of 1936 the defendant company was directed by a letter from Delco-Frigidaire Conditioning Division to get in touch with Mr. Golder of the Golder Construction Company, which latter company was building a theatre in Philadelphia for Warner Brothers Theatres, and talk to him about furnishing air conditioning for it. This letter was given to plaintiff who interviewed Mr. Golder and was given an opportunity to bid on the contract. Under the supervision of plaintiff a bid was prepared from the plans and specifications for the theatre; the bid was submitted to Mr. Golder who thought it was too high and told plaintiff "to go back and see what [he] could do."

A later communication was received from the Delco-Frigidaire Division to the effect that Mr. Golder was going to build a number of theatres in territories not controlled by the Elliott-Lewis Electrical Company, some of them being in Pittsburgh, Washington, D. C., and other localities. In view of this situation the Delco-Frigidaire Division directed plaintiff to discontinue any further negotiations with Mr. Golder, stating, "that they would take the sale over from that point on" and would be in Philadelphia shortly to discuss it with him. Plaintiff continued: "They came in and discussed the fact that they wanted to sell a number of theatres in and around Philadelphia, and out of our territory, and that they would make it a blanket contract through the National Users' Division, and the manager came in and discussed the nature of the sales with me, asking me what price they should pay on the equipment sold to the Warner Brothers Theatres. I told them we would take a certain mark-up over the cost of the equipment;

that we would stay out of the sale and they would make it direct and they would give us the difference between our profit and the price I told the Delco-Frigidaire Conditioning Corporation they would have to sell the contract for. Therefore, I claim I very definitely started the sale, and I was called off because they were going to handle other jobs, and that was the reason we did not contact Golder any more on this job. We did eventually get that job along with several others."

Plaintiff stated he knew of his own knowledge that The Elliott-Lewis Company, by reason of its franchise from the Delco-Frigidaire Division, received a commission of $2300 on this sale, and, in further explanation of the transaction, testified that under the franchise or agreement between the Delco-Frigidaire Division and the defendant, as its distributor, the former agreed to protect the latter in all sales made direct from the factory to purchasers in the Philadelphia territory and that the sale was made with the "permission" of the defendant granted in consideration of the payment to it of $2300. Plaintiff's testimony was that he demanded his commission on the sale as soon as the equipment had been installed and that the matter was still in dispute between defendant and himself when his employment was terminated. This was denied by the representatives of defendant, but as the testimony should be read in the light most favorable to plaintiff his version must be accepted.

Defendant's general manager, Rowland, when called as its witness, did not specifically deny any part of plaintiff's testimony relative to the terms of his contract of employment, but said he (Rowland) did not consider the sale to Universal Air Conditioning Company as coming under the description, "national users' sales," as used in that contract. His contention was that the phrase was intended to refer to such purchasers as "chain stores that are national in their scope." Upon further cross-examination, he admitted that Warner

Brothers' Theatres "could be considered national users." An excerpt from Rowland's testimony, which throws considerable light upon the entire situation and supports plaintiff's contention that at the instance of defendant he initiated the negotiations which terminated in the sale, reads:

"By the court: Q. You received twenty-three hundred dollars? A. That is correct. Q. Why did you receive twenty-three hundred dollars? A. Because we had a franchise with the Delco-Frigidaire Conditioning Division giving us certain territories which were to be our territory for the sale of this equipment, and due to the fact they came into this territory and sold equipment direct, they paid us a compensating commission. Q. For the privilege of coming in here? A. That is correct. By Mr. Kitson, (counsel for plaintiff) : Q. What was that mark-up? A. That didn't involve any definite mark-up. *The arrangement we had on that in the beginning that Mr. McKee had made with the factory* called for some definite mark-up which would have been approximately eighty-seven hundred dollars, and the factory came back and explained to us they hadn't made that much money on the job and their contention was they had suffered some losses on the job, and that the best they could pay us was twenty-three hundred and thirty-five dollars, which in the opinion of Mr. Lewis and myself we should accept. Q. They never contended your firm was not entitled to a commission? A. They never contended we were not entitled to some commission ...... Q. Do you recollect having any conversation between the representative of the Delco-Frigidaire Conditioning Corporation, Mr. McKee and yourself, regarding the amount of your commission or royalty or mark-up? A. I do. Q. In connection with this Universal Air Conditioning Company job and other jobs? A. I recall that conversation ...... Q. Do you remember Mr. McKee said you should hold out for eighty-seven hundred dollars instead of twenty-three

hundred dollars? ...... A. Mr. McKee did suggest that we should hold out for the full amount of settlement. In other words, he was for taking the full pound of flesh." (Italics supplied.)

Defendant had, of course, the right to make any compromise it saw fit with the company for which it was the distributor, but in so doing could not affect plaintiff's rights under his contract.

The issues thus raised by the pleadings and testimony were submitted to the jury in an adequate charge to which only general exceptions were taken. When invited by the trial judge at its close to point out "anything specifically wrong" with the charge, counsel on both sides remained silent.

The first three assignments are based upon the refusal of the trial judge to affirm defendant's point for binding instructions and the subsequent denial of its motions for judgment in its favor n. o. v., or a new trial. The fourth, fifth, seventh and eighth allege error in refusing to strike out certain testimony of the plaintiff and the admission of other testimony by him over defendant's objections. All of the matters covered by this testimony were subsequently testified to at length by Rowland, defendant's general manager, and his version differed in no material feature from that of the plaintiff. Defendant suffered no possible harm from the rulings complained of. The sixth assignment related to the refusal of defendant's motion to withdraw a juror because of a remark by plaintiff's counsel that plaintiff "will testify there was no misunderstanding about the agreement." The motion and assignment are too frivolous for discussion.

Our review of the entire record has satisfied us there was competent testimony from which the jury could reasonably find that the contract of employment was intended by both parties to include commissions to the plaintiff upon such a sale as the one admittedly made to the Universal Air Conditioning Company in metro-

332

politan Philadelphia. Defendant's point for binding instructions and its motion for judgment n. o. v. were, therefore, properly denied, and as we have found no reversible trial errors it is not entitled to a new trial.

Judgment affirmed.